## PETITION OF NEWPORT.

Upon a petition asking for the laying out of a new highway in two towns, originally presented to the court of Common Pleas, if it appear by the report of the county commissioners to whom the same is referred, that, in their judgment, no new highway is really needed except in one town, and that consequently none has been actually laid out except in that town, such report is conclusive, that in the opinion of the commissioners, the petition should have been presented in the first instance to the selectmen of that town alone, and that the court have no original authority to establish the road actually laid out; and the report, in such a case, should be rejected, and the petition dismissed.

A nominal laying out of the road, as petitioned for in the other town, by running from the new highway actually laid out in one town, over a preëxisting highway in both towns, so as to extend the new highway formally to the terminus of the route petitioned for in the other town, will not change the character of the report substantially, or affect the disposition which should be made of it.

PETITION FOR CERTIORARI. On the 17th day of December, 1857, E. T. Sibley and others filed in the office of the clerk of the court of Common Pleas for Sullivan county, their petition in writing, addressed to the justices of said court at the term thereof to be holden at Newport, within and for said county, on the fourth Tuesday of January, 1858, asking for the establishment of a new highway, " commencing near the bridge that covers the stream on the highway leading from Croydon Flat to the residence of Freeman Crosby, near to and south-westerly from the dwelling-house of George Humphrey, in Croydon, in said county ; thence running south-westerly in the towns of said Croydon and Newport, in said county, to a stake on the highway leading from Newport to Claremont, near to and easterly from the dwelling-house of Isaac Quimby, in said Newport." On this petition an order of notice issued, and such further proceedings were had that at the January term, 1858, the same was referred by the court to the county commissioners for the county. At the September term,

1858, of that court, those commissioners made their report, in which, after reciting the giving of proper notices and the times and places of hearing, they say, that "having carefully and maturely considered all the testimony, proofs and allegations, the arguments of counsel for said parties, and the whole matter referred to us, we are of the opinion that it is expedient, and that it is necessary for the public accommodation, that said new highway be laid out and established as prayed for. We therefore lay out said new highway as follows, to wit:

"Beginning at a stake and stones, at a point in said Croydon, on the southerly side of the old road leading from Croydon Flat to Northville by Freeman Crosby's dwelling-house, said point being the northern terminus described in said petition, which is south, 35° west, 11 links from the south-westerly corner abutment of the George Humphrey bridge; it is also south, 35° west, 12 rods 12 links from the south-westerly corner of George Humphrey's dwelling-house." The route is then described as running by certain specified courses and distances between stakes numbered from 1 to 101 inclusive, the last " standing north, 85° 15' east, 5 rods 15 links from the south-easterly corner of Isaac Quimby's dwelling-house, and being the southern terminus of the new highway described in said petition." The report adds: "For a further description of said new highway, commencing at said stake No. 1, it runs on the line above described over said old highway, leading from Croydon Flat to Northville, and on land of Rufus Baker, 17 rods 5 links to land of Albert H. Baker; thence over said old highway and on land of said Albert H. Baker, 27 rods 10 links to land of George Humphrey; thence over said old highway and on land of said Humphrey, 52 rods 2 links to land of Freeman Crosby; thence over said old highway and on land of said Crosby, 52 rods 18 links to stake No. 10, standing on the line between said Croydon and Newport."

The new highway is similarly described, as laid out in Newport over said old highway, and the old Cornish turnpike, and on land of individuals named, to stake No. 23, standing on the southerly side of said old turnpike ; thence it is described as laid out "over land" of individuals named, "to stake No. 35, standing in the northerly side of the highway leading from Northville by the scythe factory to Newport village." It is then laid "across said highway and on an old highway running by Leonard Richardson's saw-mill, 22 rods 22 links to stake No. 38, in the southerly side of the last described highway." It is then described as laid "over lands" of individuals named, and across Sugar river three times, "to stake No. 98, standing in the centre of the old highway leading from Claremont to Newport, which said stake is $78\frac{1}{2}°$ west, 4 rods 19 links from the south-west corner of the brick dwelling-house of John G. Putnam, and south, 45° east, 8 rods 21 links from the south-east corner of the covered bridge ; thence in a south-easterly direction over said old highway, 35 rods 11 links to the intersection of the new highway leading from Claremont to Newport with said old highway ; thence over said new highway, and on lands of Francis Dodge and Isaac Quimby, 61 rods 13 links to stake No. 101 ; said stake being the southern terminus of the new highway before described : said line of survey being the centre of the new highway, which is laid out three rods wide ; and we have assessed the following sums as damages to the several land-owners, to wit :

To Rufus Baker, of Croydon, the sum of one cent, .01

Albert H. Baker, of Concord, in Merrimack county, the sum of one cent, .01

George Humphrey, of Croydon, the sum of one cent, .01

Freeman Crosby, of Croydon, the sum of one cent, .01"

and so on, giving one cent damages to each land-owner, except to Anna B. Kilburn, of Newport, to whom $162 is awarded. After providing for the construction of a dry bridge in Anna B. Kilburn's pasture, the commissioners further say :

"We have estimated the expense of building and making that portion of the new highway in said Newport, between stakes Nos. 23 and 98, at $2,715. We have estimated the expense of building and constructing three bridges across Sugar river, within the above mentioned bounds, at $2,500 ; and we have estimated the expense of building and constructing said dry bridge at $15; amounting in the whole to the sum of $5,230.

"And we judge that it is inexpedient to make any alteration in the grading or constructing of that portion of the new highway which is laid out over an old highway, between stakes No. 1 and No. 10, in said Croydon, between stakes No. 10 and No. 23, and between stakes No. 98 and No. 101, in said Newport," &c. &c.

Upon the presentation of this report the town of Newport filed objections to its acceptance, as follows :

"1. That the new highway laid out by the commissioners is substantially laid out in Newport upon a route substantially different from that described in the petition to the court.

2. That the new highway laid out by the commissioners is substantially laid out in the town of Newport only; that the pretended laying out of the same in the town of Croydon is wholly in and over old, long and well established highways, which had been constantly used, made and repaired by said town of Croydon for more than twenty years last past, before the day of filing said petition in this court, without essentially altering said highways, or the width or grade thereof, and that this court has no jurisdiction to accept such report.

3. That the report is not in conformity with the peti-

tion—the prayer of the petition being for a new highway in two towns, and by the report itself a new highway is substantially laid out in one town only.

4. That the report of the commissioners is not a report on the subject matter referred to them.

5. That the pretended laying out of the said highway, as set forth in said report, in the town of Croydon, by said commissioners, is a mere evasion, to transfer the jurisdiction over that part of the route prayed for in said petition situate in said Newport, from the authorities of said town to the authorities of the county or to themselves."

Newport also moved the court, for the reasons set forth in these objections, to reject the report and dismiss the petition. The court overruled the motion and the objections, accepted the report, and ordered judgment thereon. Newport excepted, and the exceptions were allowed.

The petition set forth the proceedings in the Common Pleas, and prayed that the judgment might be vacated, for alleged errors in overruling the aforesaid exceptions, accepting the report of the commissioners and ordering judgment thereon, instead of rejecting the same and dismissing the petition.

*A. & S. H. Edes*, for Newport.

*L. W. Barton*, for the original petitioners.

FOWLER, J. By the statutes of this State, as they existed prior to the passage of acts at the last session of the Legislature, selectmen had original jurisdiction of the laying out of new highways within their respective towns, and the court of Common Pleas of the laying out of all highways extending into two or more towns. Revised Statutes, ch. 49, sec. 1; ch. 50, sec. 1; Comp. Laws 134, 137; *Sumner's Petition*, 14 N. H. 268; *Griffin's Petition*, 27 N. H. 343.

The petition in the present case, having asked for the laying out of a new highway in two towns, was primarily within the jurisdiction of the court of Common Pleas, and was by them properly referred to the county commissioners. *Stevens* v. *Goffstown*, 21 N. H. 458; *Sumner's Petition*, 14 N. H. 268; *Hopkinton* v. *Winship*, 35 N. H. 209.

The commissioners had authority to lay out a new highway partly over an existing highway. Rev. Stat., ch. 49, sec. 9; ch. 51, sec. 3; *Raymond* v. *Griffin*, 23 N. H. 341; *State* v. *Boscawen*, 28 N. H. 222; *Hopkinton* v. *Winship*, 35 N. H. 209.

As the petition asked for a highway in two towns, it could only appear from the action of the commissioners, and their report, that the court of Common Pleas had not ultimately jurisdiction, for the reason that the public good required the construction of a new highway in one town only. Upon that point the report of the commissioners must be regarded as conclusive. *Hampstead's Petition*, 19 N. H. 347; *Hopkinton* v. *Winship*, 35 N. H. 209.

The want of jurisdiction in any tribunal renders its proceedings void; *State* v. *Richmond*, 26 N. H. 240; and when the want of jurisdiction is shown by the record and proceedings themselves, it may be taken advantage of at any time. *Griffin's Petition*, 27 N. H. 343; *Hopkinton* v. *Winship*, 35 N. H. 209.

Upon the coming in of the commissioners' report in the case now before us, the objection was substantially taken that it appeared from the report itself that no new highway was actually needed, or had in fact been laid out by the commissioners in the town of Croydon. If this were so, the objection was fatal, and should have prevailed to induce the court to reject the report and dismiss the petition. If the report showed that, in the judgment of the commissioners, no new highway was needed for the public accommodation except in Newport, and that, consequently, none had been actually laid out in Croydon, it

was conclusive, that, in the opinion of the commissioners, the petition should have been presented to the selectmen of Newport alone, and that it was an evasion of the statute, and a fraud upon the law, to give the court of Common Pleas jurisdiction in the first instance, by asking for a new highway in two towns, when the public necessity only required its construction in a single town. *Sumner's Petition*, 14 N. H. 268 ; *Hopkinton* v. *Winship*, 35 N. H. 209.

We think it quite clear, from the report of the commissioners themselves, taking the whole of it together, that in their judgment the public good did not actually require any new road in Croydon, and that they have not in fact and in substance laid out or provided for the construction of any new highway in that town. What are the facts on this point, as shown by the report itself? Why, simply that the commissioners ran over an old highway in Croydon for the distance of 149 rods and 10 links, before reaching Newport line, and then continued to run farther over the same old highway, 455 rods and 15 links, in Newport, before commencing to lay out any highway upon new ground ; thus making a distance of 605 rods, or nearly two miles, through which the commissioners followed an old road from the northern terminus of the route petitioned for, before commencing to lay out any new highway ; almost a mile and a half of this distance, too, being in the town of Newport. The commissioners also state in their report, in pursuance of the requirements of the statute [Rev. Stat., ch. 51, sec. 6 ; Comp. Laws 140,] that they " adjudge that it is inexpedient to make any alteration in the grading or constructing" of any portion of the old highway for this whole distance of 605 rods, and they therefore make no estimate of any expenses to be incurred by either town on account of it. It further appears that only nominal damages of one cent to each of six landowners for this entire distance was awarded by the commissioners ; four cents to land-owners in Croydon, and two

cents to those in Newport; making the whole burden in
any way imposed, or required by the public exigencies to
be imposed, upon the towns of Croydon and Newport for
an extent of nearly two miles of new highway, the nomi-
nal sum of six cents. Nothing could more satisfactorily
and forcibly demonstrate the perfectly nominal character of
the pretended laying out of two miles of new public high-
way. Yet, without this whole extent of nominally new
highway, the report of the commissioners would show
conclusively that the court of Common Pleas had no juris-
diction of the subject matter of their action. Strike out
from the report what upon its very face, and in the sol-
emnly declared judgment of the commissioners themselves,
is clearly and palpably nominal and formal, and the new
highway commences at an old highway in Newport, nearly
a mile and a half from the line of Croydon, and then
extends on into Newport, constantly receding farther and
farther from the town of Croydon.

It is worthy of remark, that the commissioners have
used different phraseology in describing the new highway,
as reported to have been laid out by them through the
605 rods to which we have just referred, from that em-
ployed by them in setting forth the laying out of other
portions of the route. In passing from stake No. 1 to
stake No. 23 they uniformly say that they laid out the
new highway over an old highway and on lands of indi-
viduals named, while they invariably describe the actually
new highway established by them as being laid out over
the lands of the individuals specified; and in two instan-
ces, in other portions of the route, they describe the new
highway as laid out over an existing highway, without
mentioning the existence of any land-owners. Whatever
may have been the design of this difference in phraseol-
ogy, and whether or not it was purely accidental, we think
it quite clear, that, when the commissioners say they laid
out a new highway over an existing highway, and on land

of individuals, and at the same time award no land damages to those individuals, and expressly adjudge it to be unnecessary to make any alteration in the grade or construction of the old highway, it can only be understood that a new highway was intended to be established over an old highway constructed upon land the fee in the soil of which belonged to the individuals named, and not that any additional land of those individuals, not before set apart for public use, had been appropriated to that object.

It has been urged by the counsel for the original petitioners that the court below and this court are precluded from finding and holding the laying out of a new highway in Croydon to be merely nominal and formal, by the averment of the commissioners in one part of their report that they have laid out such new highway, however conclusively the nominal and formal character of the laying out may appear from the whole report taken together. This position seems to us utterly untenable. Suppose commissioners, upon a petition for a new highway in two or more towns, instead of actually laying out any portion of new road, should undertake to establish a new highway through the entire route petitioned for, by running a line as its centre over old highways from one terminus to the other, awarding nominal damages of one cent to each of the several land-owners, and, in addition, should expressly adjudicate that no alteration whatever in the grade, width or construction of the old highways was necessary to be made, or any expense whatever to be incurred by either of the towns through which the alleged new highway was thus established, would it be contended that such a purely nominal laying out must be conclusive, and that its nominal and evasive character, so apparent from the whole report, could not be successfully urged? Yet such a laying out would differ in no essential particulars from the alleged laying out in Croydon, as shown by the report before us.

Not only had Newport a right to object to such an evasion of the true intent and meaning of the provisions of the statutes, as would be sanctioned by the acceptance of the report in the present case, but the county of Sullivan as well.

Under existing laws, Newport would have been entitled, if the new highway actually intended to be established by the commissioners had been asked for, and the selectmen had refused to lay it, upon reference of the matter to the commissioners, if they had decided to lay it, to have required the judgment of those commissioners as to whether or not Croydon should bear a part of the burden of its construction ; and if, in the judgment of the commissioners, Newport would have been excessively burdened by the expense of constructing and maintaining the proposed road, and Croydon and its citizens were to be greatly benefitted thereby, it would have been their duty to have imposed a portion of the expense of its construction upon Croydon. By extending the road into both towns in the petition, and the nominal laying out of 605 rods of new highway over an old one, from the northern terminus of the route petitioned for to the commencement of the actual new road in Newport, if this course be permitted to receive the sanction of the court, not only would Newport be deprived of the privilege of having her own selectmen pass upon the necessity of all new roads within her borders, in the first instance, but be effectually prohibited from asking, as well as the commissioners from granting, that some portion of the expense of constructing an expensive road should be imposed upon Croydon. Laws of 1850, ch. 958 ; Comp. Laws 141 ; *Sanborn's Petition*, 33 N. H. 71.

So, too, the costs of all proceedings before the commissioners, in laying out highways extending into two or more towns, are to be paid by the county ; whereas, if the road be only necessary in a single town, and her

selectmen on petition neglect or refuse to lay it out, and it is afterwards laid by the commissioners, the town pays the entire costs of the proceedings, instead of the county. Rev. Stat., ch. 52. sec. 9 ; Comp. Stat. 143.

In every view of the question we feel compelled, therefore, to hold, that the report in this case should have been set aside, on the ground that it was apparent from the report itself that the court of Common Pleas had no authority to accept it, there having been no substantial and actual laying out of any new highway except in the single town of Newport, and. the court of Common Pleas having no original jurisdiction to establish a new highway wholly within the limits of a single town.

It is not to be presumed that there could have been any intention on the part of the commissioners, in the case before us, to evade the provisions of the law by a nominal and formal laying out of a new highway in Croydon ; indeed, they seem to have carefully stated, fully and particularly, all the facts and circumstances going to show the completely nominal character of that part of their proceedings, as if with a view of having its validity tested.

A writ of *certiorari* must be awarded, to quash the judgment in the court below.

*Certiorari awarded.*